Good morning, ladies and gentlemen. Our first case for argument this morning is Quinn v. the Chicago Board of Education. Mr. Geoheven. It's Gagin, actually. Thomas Gagin for the plaintiffs. May it please the Court, good morning. Our contention in this case is straightforward, that Section 2 of the Voting Rights Act prohibits any state elected system or electoral system that excludes, that sets up an election process in the state which excludes far more of its black and Latino citizens than its white citizens when it closes off that process to 45% of Illinois' black citizens, and that Section 2 should apply to Illinois school boards, state school boards that are creatures of state law and subject to an election process mandatory. Counsel, in your view, must the commissioner of police also be elected? Of the City of Chicago? Yes. No. Why not? Because there is, unless there's some demonstration that the commissioner is elected by a state legal procedure and there is a racially disparate impact on the citizens of the state, if Chicago has a law that says that the citizens of Chicago would not elect the police superintendent, it would apply equally to everyone in Chicago. It would be a Chicago law applying equally to all of its citizens. Well, then I don't understand what's different between appointing the police chief and appointing the school board. There are some elective offices and some appointive offices. Of course. But so far as I know that Section 2 of the Voting Rights Act has never been applied to an appointive office or to require an appointive office instead to be elected. Do you know of any such cases? Well, we know that in the case of the Chattanooga case where there was an attempt to change the commission form of government, yes, but no, there aren't. But we do know this, that Section 5 of the Voting Rights Act required preclearance when states moved from appointive systems to elective systems. And we know that in Irby versus Virginia State Board of Elections, the Fourth Circuit said that because the state had moved to an appointive system across the board that had no racial disparate impact, there was no violation of Section 2. Had there been a racially disparate impact? I'm not sure that I got your answer to my question. My question is, has any court ever held that Section 2 requires election rather than appointment for a given office? Not for a given office without a racially disparate impact. That's correct. The key in Section 2 is whether there's a racially disparate impact. With a racially disparate impact, there must be an election? I'm not aware of a court addressing an issue where there was a racially disparate impact. I've looked, and of course the Sixth Circuit has said there is no such need. The Fourth Circuit has held there's no such need. I was just wondering whether there was any case that had ever come out your way. The Sixth Circuit has, Mixon and Moore, has come out the other way. And we have submitted that that decision is wrong because it's based on a wrong interpretation of Chisholm versus consistent with the argument that we have made here, because the movement to an appointed system was done without any racial impact. And it provides at least implicit support for the argument that we're making here, that when there is a movement to an appointed system with a racially disparate impact, and there was none in the Virginia case, then there would be a violation of Section 2. Furthermore, in the Fourth Circuit case in Irby- I must say, counsel, I also don't understand this whole argument about racially disparate impact. There is no voting for the school board in Chicago. No blacks vote for it, no Hispanics vote for it, and no whites vote for it. But every black, every Hispanic, and every white votes for mayor or is entitled to vote for mayor, and the mayor appoints the school board. It's a classic case of indirect election. How are blacks treated any differently from whites in the way in which the school board is appointed? Well, in respect to Chicago, everybody is excluded. That's correct, without any racial disparity. It's a statewide process. Everybody is included. Everybody votes for the mayor, and the mayor appoints the school board. Everybody votes for the president, and the president appoints the attorney general, by and with the advice and consent of the Senate. That's correct. There are lots of people who were appointed, but that doesn't mean that nobody voted for them. But your Honor has just stated a classic vote dilution claim, and Section 2 requires that the courts look at the totality of the circumstances. If the school board election process has been eliminated, and if the city council is not even allowed to weigh in on who's going to be on the board, as it formerly did up until 1995, you have a classic case of vote dilution, which is exactly what Section 2 was enacted to precipitate. How is that the case? How is there vote dilution? There's vote dilution because you have essentially gone from a more focused decision on electing individual members of the school board to... Well, that's not dilution, though. Well, you've moved from a system where, at least in the case of Chicago, you at least had the city council weighing in, to just the election of one single official at a citywide level to make these decisions, in a race where the mayor has many other responsibilities than just governing the school board. This is an issue about the power of the mayor, isn't it, this whole case? No, it's an issue about the power of the people. It's been for years an issue about the power of the mayor. It's an issue about the accountability of the board to the parents and the children and the voters of the city, on the same basis that it exists throughout the state. There are 859 school districts, Your Honor, in this state, and all but one... Yes, that I understand. Chicago is different, but we've got actually quite a lot of cases saying that it's within the power of the state of Illinois to have a different rule for Chicago. We would have to overrule quite a bunch of our cases to say that Chicago has to be governed just like every other city. This is Section 2 of the Voting Rights Act. It's not a constitutional claim, as in those other cases. We have a very specific law that is set up here that says, if you pass a voting procedure at a state level, which is what this state law is, that has a disparate impact and gives less opportunity to black and white citizens... I do not even understand the disparate impact claim, since everybody votes for the mayor. Everybody's entitled to vote for the mayor equally. It's a change from direct election to indirect election. That I understand, but I don't understand how there's any disparate impact. Because the disparate impact is with respect to the other citizens of the state and all the other school districts, who have a much more... I think we may be talking past one another. Every place else, there is direct election, and in Chicago, there is indirect election. But I don't see how that is a disparate impact on anybody. In every other place, you have election for mayor and school board. In the case of Chicago, it's just the mayor, where there is a much broader voting district that dilutes the vote. Your Honor would only look at, say, Chisholm versus Romer. There's a classic case where the Supreme Court took down a procedure that expanded the district in which blacks could vote, and found that that was a vote dilution and a dilution of minority voting power. I understand that many people don't like the Voting Rights Act, and they don't like its focus on limiting opportunity of African Americans and Latinos to elect representatives of their choice. But if ever there was a case where this statute applies in its literal terms, it's this case. And if you would allow me just to read the statute here for a second. Section B, a violation of Section A is established if, based on the totality of the circumstances, this isn't a formalistic inquiry. It has shown that the political processes leading to nomination or election in the state or political subdivision, that's either in the state or political subdivision, are not equally open to participation by members of a class of citizens protected by Section A, in that its members have less opportunity than other members of the electorate, and that's the state electorate, to participate in the political process and to elect representatives of their choice. That is literally what is happening here. And if this court disagrees with the policy of the Voting Act and thinks that indirect elections are just as good as direct elections, fine. But that's a formalistic decision that is at odds with what this statute requires, which is a focus on the effect, on the impact. And what is clear here is that voters in Illinois don't have the right to elect the same kind  of person. That's wrong. That's racially disparate. And that's what the Voting Rights Act says. And if it were done by racial intent, and the defendants say, this statute doesn't even apply if the state did this with racial intent. If it is done with racial intent, the Supreme Court in Chisholm v. Romer says it has to violate Section 2. Well, if the legislature set up this system with racial intent, it would certainly violate the 15th Amendment. And if it violates the 15th Amendment, Chisholm v. Romer says it has to violate Section 2. If you look at the literal language, if you look at what the Supreme Court says, if you look at Congress's attempt in 1982 to expand this beyond the 15th Amendment, if it could, this statute has to apply. And I understand that some people don't like elected school boards. And some people may think it's just as good to elect for mayor. But it's not. It's not the same set of voting rights that people have in the other parts of the electorate that are affected by the state law. And that's why it's a violation. Why did you sue the Chicago School Board? Well, we've- The local board did not write this law. It's not responsible for enforcing this law. That's correct. No remedy can be granted against the Chicago School Board. Well, we felt we had to do it because if we had an election procedure, we'd have to have them in as a defendant. So that in terms of crafting the remedy, it was important to us to have the Chicago School Board in. But Your Honor is correct. We could have brought this suit just against the state of Illinois. And it was only for procedural reasons that we felt that we had to. In the event that we were going to get a remedy, we'd have to have the board in the case. And I think the board wanted to be in the case. And it had rights that were affected. And it would have had an automatic right to intervene. So why not put them in? But you're really seeking relief against the state of Illinois. It's primarily against the state law. We're not challenging any local law. We're not challenging anything. The city of Chicago, if it doesn't want an elected board, it's perfectly free under the Voting Rights Act to get rid of it. The city of Chicago can pass a law that says we don't want to have, the city council perhaps could, perhaps it has to be done by referendum. But that would be a law that applies equally to everybody in the affected electorate. Their argument is that a state law, that Voting Rights Act only applies to a state law that affects state offices, not local offices. That's the crux of their argument as to why they aren't covered by the Voting Rights Act. Because it seems clear, even to the defendants, that there's a huge difference between voting for the school board and not voting for the school board. And their argument is that it only applies to state offices. But if that were true, first of all, these local boards are state offices. They aren't created by local law, they're created by state law. The election procedure is all done by state law. But if that argument were correct, then the defendants, then the state would have no, it would not violate the Voting Rights Act for the state to engage in racial gerrymandering of congressional districts, because U.S. members of the House are not state officers, therefore, under their interpretation, the state could engage in racial gerrymandering of congressional districts. Well, it can't, and under their argument, the state of Illinois could pass a law that majority white boards can vote for a board of elections, but not majority black boards, because it only affects one locality. Well, that's clearly a violation of the 15th Amendment, and it's clearly a violation of Section 2 of the Voting Rights, and why do we know that? Because the Supreme Court has said so, very emphatically, in Chisholm v. Romer, if not other cases. And it's what Congress clearly was trying to do, expand it to the outer scope of the 15th Amendment, and it's clearly what the marchers in Selma, you know, marched for. They didn't march for a law that was less than what they already had under the 15th Amendment. And I understand that there are, that by some interpretations, you could bring Edmund Burke in here, for example, to think, well, maybe it's better to have virtual representation than direct representation, or representation at a higher level than a lower level. But the point is that the voting rights that are being given to people are not equally distributed in the state, and you can't make a comparison between election for mayor of Chicago and the right of people in Hinsdale and Waukegan and every other place to vote for the specific people that they want to have governing the education of their children. Ask any parent as to whether or not there's a difference in these two voting procedures, and they will tell you. And that's the essence of this case here. We also have a claim, which I haven't really gotten to under Section, under the 15th Amendment, saying that the 1995 Act was an act of race discrimination because it targeted a 1988 Act, which specifically, and I mean specifically, talked about empowering black and Latino citizens to determine who would run the school board at a time when the board was under a desegregation order. And it replaced that system by turning up, and the defendants admit that it was a racially tense atmosphere at the time, with a system where the white mayor had all the power. And I understand your Honor's point that maybe this case is just about the mayor's power, but it is about the mayor's power when the mayor is white and the people on this process were largely black and Latino, and a law was passed to make sure that the white mayor had much more power than they did. And in the context of a desegregation order, you turned the process, by doing this, and I'm referring to the state of Illinois here, you turned the process over to a white mayor who was expected to be there forever, and look at the result. This is what we were trying to get into in the complaint in the district court. Look at the result. This appointed board was less accountable than the board that existed when the desegregation, de facto segregation, I should say, took place. And after this law was passed, that appointed board engaged in serious, continued racial segregation, closed over a hundred schools that were underperforming black schools, shifted the children out of gentrifying schools. Well, closing the schools doesn't indicate that there is a violation of, it's not discriminatory necessarily, is it? Not discriminatory necessarily, but it was here. And that's why we needed an attempt to present our case, which was that all these schools were all black schools, the kids were transferred to other all black schools in more remote areas, the gentrifying areas were freed up, and while the black student population has dropped dramatically, the segregation of these schools has continued. This sounds, again, more as a complaint, not necessarily about desegregation or segregation, but about how the school boards were run. No, it's about how the school board was structured in a way that it would continue this official history of segregation. You have to look at the court record about the segregation, de facto segregation of the Chicago schools to understand why the General Assembly picked this mechanism, which in place of the local school councils in the 1988 Act was tailor-made to continue that segregation and to underfund the schools by keeping it unaccountable to the people whose children were attending the schools and who wanted those schools to be better and racially integrated. And we didn't have a chance to present that case. It was thrown out at the pleading stage. The federal courts are supposed to be guardians of civil rights. At the very least, think how that looks to African American and Latino citizens of this city. We weren't even allowed to present the case. Counsel, if I could interrupt for a minute. I'm sorry. A great deal of the evidence that you're suggesting you were denied an opportunity to present post-dates the adoption of the 1995 Act and so cannot shed any light on the motive for adopting that Act. We disagree that if you want to find out what the motive was for doing something, look at what was done with it. It was exactly in the context of the history of segregation, the segregation decree, the changeover from a process that the Harold Washington people wanted in place to integrate the schools to one that ensured they wouldn't be integrated. It's all of a piece. You have to look upon that as part of the totality of the circumstances. When you're making a totality of circumstances determination, which is just what happens in Arlington, which is just what Arlington Heights calls for. We alleged all five factors of the Arlington Heights case. It's set out in the brief. All five. Can't we at least have a hearing? It's just not what Rule 12b-6 is set up to do. No, we didn't follow Rule 56.1 statement, but we filed a very respectable complaint, quite a long one, that detailed a lot of the racial segregation. Could we have done a better job? Sure. I'm sure we could have done a better job. I'm sure, in retrospect, we could have added a few more details here and there. We laid out a case that a federal judge in race discrimination should have allowed us to present, at least present. That is really what is galling about this decision. It's throwing us out, not under, when we went way beyond Iqbal and the other cases. There's no heightened standard of pleading for civil rights cases. We went through the Arlington Heights factors. We should have been allowed to present it. Thank you. Ms. Pestle-Coburn. May it please the court. Your Honor, plaintiffs are challenging Article 34 of the Illinois School Code, which by its definition, is about 100,000 people, so it applies to Chicago. Article 34 states that cities with populations over 500,000 shall have one school district, that the district shall be managed by a board of education, and that the members of the board shall be appointed by the mayor. In 1995, the legislature passed Section 34.3 of Article 34. Section 34.3 removed the requirement that the city council approve the mayor's appointments to the board. It also eliminated the nominating commission that was first created in 1988 for the purpose of providing candidates from which the mayor was supposed to select new members of the board. The plaintiffs claim that Article 34 and Section 34.3 therein is unconstitutional because it denies them the right to vote for members of the board on account of their race and because it deprives them of equal rights on account of their race. Plaintiffs also claim that Section 34.3 violates the Voting Rights Act for the same reason, because it allegedly denies them the right to vote for members of the board on account of their race. Plaintiffs' claims fail for two simple reasons that Your Honor's questions already indicate. I'll identify the reasons and then explain them. The first reason plaintiffs' claims fail is because plaintiffs don't have a right to vote for the members of the board. The second reason it fails is because plaintiffs' rights to equal protection are not violated by Section 34.3 because there is no discrimination, as Your Honor's indicated, on the basis of race. Section 34.3 is race neutral. All the citizens of Chicago, black and white, are treated the same. None have the right to vote. So why don't plaintiffs have a right to vote for members of the board? The Board of Education of the City of Chicago is an independent political subdivision of the state of Illinois created by the state. As the Supreme Court has said on numerous occasions, when states create political subdivisions like the board, they can give those subdivisions whatever powers and structures they deem appropriate. In the case of the board, the legislature determined that members of the board should be appointed by the mayor. And ever since 1872, when the board was created, the mayor has, in fact, appointed the board's members. Thus, Chicagoans never have had a legislatively created right to vote for board members, and they have no such right to vote for board members via the Illinois Constitution as held in People v. Death Ridge. Chicagoans also have no right to vote for members of school boards under the federal constitution. Not only is no such right included in the federal constitution, the Supreme Court has affirmatively recognized that the constitution does not guarantee citizens the right to vote for local school boards. Over 50 years ago, in the Saylor's case, the United States Supreme Court held that states can permissibly select from a variety of methods to fill seats on a local school board. It said that they could use elective systems, appointive systems, or combined systems where in some areas of a state, school board members are elected, and in other areas of a state, they're appointed. In light of the Supreme Court precedent that I've just described, establishing areas where there are no voting rights, like the Illinois legislature did for Chicago, is permissible. And its permissibility is clearly demonstrated by the Sixth Circuit cases of Mixon and Moore, which plaintiffs attempt to distinguish just by calling them wrong. Well, they aren't wrong. In both of those cases, the Sixth Circuit rejected equal protection challenges to the appointive systems. Not only did the Sixth Circuit hold the establishment of an appointive system constitutionally permissible, it did so despite the fact that in all other areas of the states, and we're speaking of Michigan and Ohio, the elective system for picking school board members remained intact. So Mixon and Moore not only show that there is no constitutional right to vote for local school boards, they show that mixed systems of appointive in some areas of a state and elective in others is fine and constitutional. Plaintiffs rely on two cases to try and refute the sailors' holding, but those cases are an opposite. And as I said, they fail to refute Mixon and Moore on any legal grounds. The two cases plaintiffs cite to try and diminish the sailors' holding are Hadley and Avery. These cases are inapposite because both of those involve situations where the state legislatures had created a right to vote, but they failed to adhere to the constitutional provision and requirement of one person, one vote. So in those cases, some people's vote counted more than others, and that's not constitutional. In both of those cases, the statutes that were being challenged were deemed unconstitutional. More significantly or equally significantly, both of those cases, Hadley and Avery, cite to sailors for the proposition that an appointive system where there's no election at all would have been justified. I'd also note that though plaintiffs attempt to diminish the sailors' holding by reference to Hadley and Avery, they don't mention sailors in their brief at all. And because sailors is controlling precedent, their failure to mention sailors, and more importantly to distinguish it, is grounds alone to call their appeal frivolous and subject to dismissal for that reason. Is your argument limited to school boards, or would it apply the same way to local governments, city council? We're not really making that administrative versus legislative distinction that they talk about. That's not our argument. That just misstates our arguments. The only argument we're making is that in this system where there is an appointive system and always has been a appointive system, you don't apply the Voting Rights Act, let alone the 15th Amendment, because those two grounds for their claims obviously require there to be a vote in the first place. There's not. The Voting Rights Act doesn't apply when there's not a vote in question. So because plaintiffs have no constitutional right or legislatively granted right to vote in... When Chicago's school board was elected, was it elected in districts or at large? It's elected in districts because Article 34 says that cities with populations over 500,000 have one district, and that one district is governed by one board of education. No, we may be not communicating. When school board members in Chicago were elected, was everybody elected at large? Yes. That is, was there a constituency of the city as a whole? Yes, Your Honor. All right. So there was no move from single-member districts to at-large election at any time? No, no. All right. That would, I assume, be subject to Section 5, because I was about to ask if there were preclearance for that move. It may be, but that's not the case in here. All right. Okay, thank you. So since there's no constitutional or legislatively granted right to vote for the board, plaintiffs can't challenge Section 34.3 based on the Voting Rights Act, because to prove a violation of the Voting Rights Act, like I said, a plaintiff must prove that one racial group has less opportunity to elect representatives of its choice than another racial group. And since there is no election relative to the board, the Voting Rights Act does not apply. It also does not apply because plaintiffs are unable to show that there was any racial group that had less opportunity to elect the representatives of their choice, because as Your Honor pointed out a couple of times, all Chicagoans are treated the same. No one elects the board. No one has been disenfranchised because no one was enfranchised in the first place. That's exactly right. And for those same reasons, the 15th Amendment doesn't apply because it only relates to voting rights.  And again, there's no discrimination because Section 34.3 is race neutral and by definition does not distinguish between races. So that leaves plaintiffs' claims that Section 34.3 violates their rights to equal protection because they're treated differently than whites. So they say, this claim also fails because Section 34.3 is race neutral. There's simply no different treatment among the relevant constituent, which are the residents of the city of Chicago. Plaintiffs' equal protection claims also were properly dismissed by the lower court because Section 34.3 passes constitutional muster. The district court found that Section 34.3 did not violate the equal protection clause of the Constitution when it dismissed both Counts 1 and Count 4. As your honors know, in plaintiff's complaint, they challenged Section 34.3 on equal protection grounds in both Counts 1 and Count 4. And the district court did dismiss both counts and plaintiffs chose not to appeal the dismissal of Count 1. Therefore, they chose not to appeal the determination by the lower court that Section 34.3 is constitutional. And we don't believe that in light of their choice not to appeal Count 1, they should be allowed to make an end run around the determination that 34.3 is constitutional by arguing an equal protection claim in Count 4. But even if they could properly appeal the equal protection claim in Count 4, it still fails because Section 34.3 is, in fact, constitutional. Under the law, statutes are presumed to be constitutional. To overcome the presumption, a plaintiff has to satisfy the requirements of the test by which a statute's constitutionality is evaluated. The rational basis test used by the district court is the test that applies to Section 34.3. It applies because Section 34.3 is neutral. Section 34.3 does not apply to a suspect class, which plaintiffs admit, and it does not involve a fundamental right, as I've explained earlier. Therefore, to prevail on an equal protection claim, plaintiffs had to show that Section 34.3 fails the rational basis test, which they could only do by showing that there was no conceivable legitimate state interest for which it could have been passed. Plaintiffs couldn't make that showing because there are legitimate reasons why it was passed. As the legislature indicated, Article 34 was passed due to the educational crisis in Chicago Public Schools. It was passed in furtherance of education. It was passed to make sure board seats were filled as opposed to being left open as they had been. And it was passed to make the mayor accountable for the board's actions. So Section 34.3 easily passes the low hurdle of the rational basis test. Right. This is just the Count 1 argument. I'm moving on to the intentional that they purport to assert the Count 1. Okay. We don't have a challenge on appeal to the dismissal of Count 1. That's right. We have a challenge to the dismissal of the race-based equal protection claim. That's correct. Not the generic equal protection claim. That's correct. So plaintiffs attempt to get around the conclusion that the rational basis test applies to Section 34.3 and that Section 34.3 passes that test by arguing facts. I think they're just two different kinds of claims. Right. It's not an attempt to get around one. Well, it is an attempt to show why the rational basis test doesn't apply to the valuation of Section 34.3. It's just a race-based discrimination claim under the Equal Protection Clause. Okay. And they do that by trying to satisfy the Arlington Heights requirements. And there's two points you need to keep in mind with respect to that race-based claim. First, because plaintiffs elected to stand on their complaint, if this court finds the complaint deficient, then the plaintiffs still should not be permitted to amend it because their failure to seek leave to amend in the district court means that they have waived their right to amend their complaint in this court. The second point to keep in mind regarding the race-based claim is that to state a claim of intentional discrimination, plaintiffs had to allege facts showing the legislature passed Section 34.3 with an intent to discriminate. In other words, facts showing that, at least in part, the legislature was motivated by an invidious purpose of discriminating against minorities. And as plaintiffs admit in Arlington Heights, the Supreme Court reiterated that showing a statute has a disparate impact on a particular racial group is not sufficient. You have to show intent. This court has previously considered whether Article 34 was passed for such an intent in the Hearn case in 1999, and the court determined that it wasn't. Then relative to the Arlington Heights factors, plaintiffs claim that they have satisfied all the factors and they haven't. They've used conclusory evidence. They've used evidence, as the court has pointed out, that was related to events that occurred years and years after the 1995 Act was passed, so it has nothing to do with the motive at the time. They've relied on statements of a national public figure. That has nothing to do with the legislative motive at the time. They relied on a history of segregation in the schools. Thank you, counsel. Thank you. Ms. Hanson. Good morning. May it please the court. I think I cooperatively set forth most of the arguments, and so I won't belabor those points. I'll just adopt their arguments, but I just did want to clarify one point regarding the Voting Rights Act, because plaintiffs suggest that it's our position that the Voting Rights Act doesn't apply because this is not a statewide office, that the Voting Rights Act would only apply if it was a statewide election, and that's not the case. If the General Assembly passes a law granting a right to vote for a local office, then the Voting Rights Act would apply to ensure, Section 2 would apply to ensure that there was no discrimination with respect to an election for that local office. Ms. Hanson, I have a question about the state's position with respect to the Equal Protection Claim. Okay. The state has been named as a party in its own name, and there are official capacity claims against the state. The Equal Protection Claim is, I assume, being brought under 42 U.S.C. 1983. That's correct. And the Supreme Court has held that the state is not a person for purposes of 1983. That's correct, Your Honor. In the complaint, they don't name the state of Illinois with respect to the 14th Amendment Claim, and that's why we addressed the Voting Rights Act. And the members of the Illinois State School Board are also not parties with respect to the 1983 claim? The District Court dismissed the members of the Illinois State Board of Education, and plaintiffs did not appeal that, so they're out of the case. Okay. Who in state government enforces voting laws? If this is a voting rights challenge, who's the usual defendant in a Voting Rights Act case? Board of Elections, maybe? Board of Elections, perhaps. If there's... I mean, usually we see a different... A different defendant. Defendant, right? Certainly, yes. Yes, that is the case. But here they've chosen to sue the state in its own name. And that claim, as you mentioned, that claim cannot be... They cannot sue the state under the 14th Amendment. Right, but I mean, if we were to decide that the plaintiffs should prevail here and the case should go back for a trial, I don't know which defendant could be ordered to an injunction would operate against, because this is a Voting Rights Act challenge, and the relief that's requested is that the state be ordered to rewrite its laws with respect to the Chicago School Board selection process. So who's the right defendant to issue an injunction against for that kind of relief? Among the defendants... Right, amongst... They haven't named... They haven't brought a claim against a defendant that would be the proper party for injunctive relief. That's certainly true. Who would that party be? Perhaps... They want the law rewritten, a court order saying, devise an elective system. That's how I read the claim for relief here. I think that's correct, and because they're not entitled to that relief under the... Oh, I understand your argument on the merits. I'm talking about who's the right defendant should your argument not prevail on the merits and the case go back for a trial. Do we have the right defendant in this case? I don't believe that we do. I don't believe that we have the right defendant in this case. There's no defendant against whom injunctive relief at the state level... Counsel, why can't a district judge, if the current system violates Section 2, why can't a district judge just order Chicago to ignore state law and implement a system that does comply with Section 2? Given the supremacy clause, a federal judge can order Chicago to follow federal law despite conflicting state law. That doesn't seem problematic. Well, it's the General Assembly that enacts legislation... Of course the General Assembly enacts legislation, but if the legislation violates Section 2 of the Voting Rights Act, then Chicago can be ordered to follow federal law rather than state law. That's what normally happens in cases like this. Okay, or the General Assembly, or it would come to a... No, you can't order the General Assembly to pass laws. All a federal court can do is order people to follow the law, and federal law takes precedence over state law. Not all that hard. I see that my time is up unless... Thank you, Counsel. We'll give the appellants one more minute for oral argument for a quick rebuttal. Just three points. We did discuss Saylors at pages 6 and 7 of our reply brief, and we pointed out that in Saylors, the court says this holding does not apply if there's a claim of race discrimination. There is a claim of race discrimination. Saylors isn't relevant. I just want to emphasize that in the Mixon and Moore cases, we're not just saying they're wrong. We explain in our briefs why they're wrong. They rely upon Chisholm, of all cases, to hold that you can move from an appointed system to an elected system. Chisholm clearly does not hold that. In fact, it clearly requires just the opposite because it says that the 15th Amendment and the Section 2 of the Voting Rights Act are coextensive. Chisholm had to do with an elected system. It was an at-large versus multi-member district kind of, or single-member district versus multi-member district, right? That's correct, and the court said... We just don't have that fact pattern here. Right, and that's why I asked about whether there had been single-member districts with a change to what amounts to an at-large election. That would presumably be a Section 5. And I wanted to get to that because there's never been an elected school board in Chicago. It's always been appointed from time immemorial. What has changed is that the city council used to confirm and pass the budgets, and that city council role has been removed from the system now so that it's only accountable to the mayor. But our argument is not really vote dilution, although we discussed that in our brief because we think this is, in a way, a form of vote dilution. But it's really that the heart of our argument is the disparity with other citizens of the state. And I just wanted to emphasize our view that Irby implicitly supports our view because Irby says you can move to an appointed system when there is no racially disparate impact. There is here. On the defendant issue... Thank you very much, counsel. The case is taken under advisement.